On the docket is Timothy Dougherty and Tanya Dougherty v. Shrum, Inc. And then a pound of white, I guess. Okay. Mr. Bootnick. You represent Dougherty's, right? That is correct. May it please the court. Counsel. Counsel. My name is Tim Guthknecht of the law firm of Stumpf and Guthknecht, and in this case I represent Tanya and Timothy Dougherty. They were the plaintiffs in the original action, and they are the defendants in the companion case. Thank you. We won't count that against you. Would you turn the time off? No. As soon as it's done. Okay. Whenever you're ready, just speak up. Okay. This case involves property owners who contracted for the replacement of their roof, and they paid over $28,000 for it, but they still are facing a judgment for several thousand more dollars that they never expected and they never agreed to. Just a few key facts for the court to refresh your memories about this case. When the time came for my clients to hire Shrum, Inc., Shrum presented their form of contract to my clients, which they signed. One of the key provisions in that contract was a provision that called for any changes or additions to be in writing. The contract was for $26,500. At the end of the work, my clients were presented with a bill for almost 30% more than what they had agreed to pay, and they were surprised by that. They took a look at the extra charges, and they decided some of them had merit, and they voluntarily paid them, but some of the other charges they did not agree with. They thought either it was work that should have been covered under the original contract amount or charges that were incurred due to mistakes by Shrum, and so they didn't pay that amount. Did your clients take the position that they never consented to the work outside the contract before it was done? That's correct. The Watson case is particularly instructive here. This court rendered that case Watson-Lumber, and under the rules of Watson-Lumber, in order for a contractor to collect extras, there has to be consent, and it's of an informed nature, an informed consent. They have to know, first, this is going to be extra, second, what the cost is going to be, and they have to consent to it at that time. Those are the rules from Watson-Lumber. Okay. I'll just jump right to the testimony in this case. There was no testimony that any such discussion like that ever happened. Mr. Shrum testified, well, he wanted that, or they wanted that, or they knew we were doing that, or he saw us doing that, or whatever. That's not what – that doesn't rise to the level that Watson-Lumber requires. Watson-Lumber requires there to be a discussion about, all right, there's going to be an extra charge for this. This is what the extra charge is going to be. Do you agree to this? But that's what I'm asking is when they said they wanted this or – I couldn't tell whether it was before the work was done or after the work was done. I mean, did they know that this work was going on, some of it, all of it, none of it? They knew the work was proceeding, whether or not they – The extras. As I said, when they received the work for the extras, they decided that some of those things were, in fact, extra, but most of them they didn't think were extra. They think that were part of the original contract. Mr. Shrum's testimony was they wanted it. They wanted it, right. That's exactly the case in Watson-Lumber. There was testimony in that case saying, well, they wanted this and they wanted that. That's not the same as a discussion about, well, that's not part of the original contract. If we do that, there will be extra charges. So under Watson-Lumber, they wanted it, isn't enough. Acquiescence isn't enough. There has to be evidence that they consented to these charges before they were incurred. Acquiescence after the fact is not sufficient under Watson-Lumber. And voluntary payment under Watson-Lumber is not sufficient. There's an argument being made here just because we voluntarily paid for some that we waived our right to complain about the others. Watson-Lumber says no, that's not the case. Voluntary payment, that's after the fact. That's not prior consent, and prior consent is what's necessary. Okay. So, and further, because there's a, Shrum's own contract says additional amounts or changes have to be in writing, and the evidence here, and it was admitted, there were no additional amounts set forth in writing until they got the final bill. So even under their own, if they followed the terms of their own contract, we wouldn't be here today. And what was the contract for exactly? $26,500. No, no, no. A new roof, or? Yeah. What did it say? Could you? Appendix pages 6, 7, and 8 have the contract. It called for replacement of essentially three roofs because the building has a couple of spaces. Would they deck it, or what did they do? Removal, some deck replacing. And removal is probably in the original contract. That's, no, nothing extra on removal. Right. The contract did call for some extra charges for decking. It might apply to voluntarily paying some of those. Well, I mean, did it say so much afoot, or what? It did for a certain type of wood, and when we brought up in the trial court that they charged for all this other stuff. Well, let's just talk with a point. Stuff is, I don't know what stuff is. I'm sorry? So I don't know what stuff is. Did they buy a new truck or something? Well, if page. . . It's in the appendix, but the extras. . . You got the page name for them? Yeah. I'm sorry. Page 85, the appendix. Okay. 22.72 man hours for misalliance labor. I'm not sure what misalliance labor is. There is some decking charges, but, like, additional dumpster. . . We're being charged for lifting cropping tile back on the roof when the original contract clearly said removal and reinstallation of cropping tile. So why we're being charged another, over $700 for reinstallation of something that's in the original contract. . . Lots of fascia bore, and so forth. It's all there on page 85. And as I said, my clients looked at that list. They were surprised by it. They looked at it, and yeah, all right, some of the decking and so forth, that's fine. And they did pay $2,000 more than what the original contract said, but they didn't agree to pay for another dumpster, for all this extra labor. The labor should be the labor, whatever it is. So. . . But the first time they see anything in writing is when they receive this bill. And under Watson Lumber, that's too late. That's too late. I was interested in the contract, not the bill. Okay. Wasn't there a contract someplace? The contract starts on page 6, page 7, and page 8. It was originally for $26,500. $13,250 at the start, $13,250 at the end, which there's no . . . I mean, the evidence shows we paid those amounts in that time. Okay. So. . . Again, Watson Lumber requires prior consent and end to the fact that there is, in their own contract, a paragraph that says changes and additions need to be in writing as well. And that wasn't done here. Watson Lumber also says if you're going to waive a clause like that, that waiver has to be approved by clear and convincing evidence. And we agreed to it ahead of time. Clear and convincing evidence and a waiver, if there's waivers. Acquiescence, not enough. Voluntary payment, not enough. Okay. What about the equities involved? It seemed that the court used some equitable ability. Yeah, it almost sounded like the court was ruling, well, there's quantum error here. The problem there is it wasn't pled that way. The only pleading by Shrum was a straight contract. So if the court's going to make a finding based on equitable considerations, it would have been nice to know that ahead of time so we could prepare evidence for that part. There was no such pleading on that, and nor did Shrum move to amend the pleadings to conform to judgment. It has in here about the half-inch plywood decking. Bill, how many sheets did they go for? I don't recall. All I know is… You're on page 8 now again? No, what page are we on? Page 8-5 is what I know about the extra charges. Well, I mean, the 400 per sheet would be an extra charge, or 40 per sheet would be an extra charge, correct? Is it 400 or 40? 40, I believe, sir. Yeah. And again, we don't dispute the fact that there was decking needed to be replaced, and we paid an extra $2,000. Okay, so… What we didn't agree to pay for is another 30% on and above what the original contract called for. You know, if the court lets this stand, what it encourages less-than-reputable contractors to do is bid it at an artificially low price and then make up the difference on the additional charges that weren't set forth. That's a bait-and-switch sort of thing, and that's just the reason why Watson Lumber sets forth those rules that have to be followed. Even the trial judge stated that, boy, homeowners, you know, I've got the exact quote in there, homeowners hate nothing more than to be told it's going to be extra, fix it, and then they end up with why. And we've quoted that in the brief. And that's exactly why Watson Lumber makes it this way. And yet the judge awarded the damages. Let's be clear about what you want here, Mr. Fulton. Sure. What is it that you're looking for this court? Three things. We think that the judgment for these additional extras that we didn't pay for should be reversed because there was not clear and convincing evidence of prior consent nor clear and convincing evidence of waiver. And the judge refused to follow Watson Lumber on those points. The second thing we're asking for is all the additional interest in attorneys fees based on collecting those amounts because even if those amounts are due, if you don't agree with me on point one, the language of Shrum's own contract only called for interest and attorney's fees if you didn't make the payment set forth in the schedule. There were two payments set forth in the schedule. It's undisputed we made those two payments. If they wanted interest and attorney's fees on the extra amounts, they should have put it in writing just like their contract said. So even if you don't find from my clients on point one, point two, they're still not entitled to the interest and attorney's fees because we made the payments we had to make in order to avoid that provision. The third thing we would like is an additional one thousand eight hundred and one dollars in attorney's fees from my client under their statutory. One thousand eight hundred and one dollars in attorney's fees from our clients because the judge found my clients on the statutory part and gave them the statutory damages but cut off their attorney's fees from the point where they filed a suit. Do you think the record is clear as to support that amount as being in connection with the release of the mechanics lien as opposed to other parts of the trial? No doubt your clients are entitled to getting that mechanics lien release, but this was all kind of lumped together is my question. So is the record going to be clear to trace that one thousand, what did you say, one thousand eight dollars to releasing the mechanics lien? Three responses to that. It's not entirely clear. That's true. But response number two, you can absolutely know that the attorney's fees connected to the statutory action didn't end the day we filed the suit. You know that. And thirdly, there's no reduction on the other side's attorney's fees for the time they spent defending the statutory action. So if the judge is going to cut my fees off, saying the rest of it had to do with the other action, how come there was no similar cutting of the other side's fees for that part of the trial that represented defending on the statutory action? So it may not be clear enough to grant the relief, but it's clear enough for you to say that that number isn't right and maybe that number should go back for further review and further direction. So on your third point, you'd want the $2,500 penalty under the mechanics lien. We were awarded that. And you want us to affirm that. I do want you to affirm that. That's what I'm asking you about. Yes. Right. And there was another $500 award? There was $500 in attorney's fees awarded and then $1,801 that wasn't awarded. We've only appealed from that part of the order that didn't grant the full fees. There were two separate orders coming out of this judgment, one related to the first case and one related to the second. The only part of the one to the statutory is the attorney's fees. So those are the three items of relief that we're asking for, that these extra charges that my clients did not pay and should not have to pay, that that judgment be reversed. Even if you don't reverse the judgment on those items, that at least the interest and attorney's fees be reversed on it because those extra charges don't fall within what they didn't pay in order to trigger that clause. And then thirdly, the additional attorney's fees that weren't awarded. The gutter helmet, is that an add-on? That's like $700. I'm getting confused here on file attempt to collect versus contract. That's like $767. I'm sorry, I'm not even seeing that. I'm just looking at page A4, which is the final attempt. It's that gutter helmet 7. Right, but that's not even under the additional charges. The additional charges are on the next page. Well, I know. Is that an extra? Is that a gift? It's kind of hard to tell here, isn't it? That's a good question. I guess I have to go back to the original contract on that part. It is probably an extra. It's probably an extra. But here's the thing. If they had followed Watson-Lumber and if they had followed their own contract, it would have all been set forth in writing to make it clear what was extra and what wasn't extra. And that's the point here. Watson-Lumber in those cases exists to protect homeowners from just what happened here, an additional 30% being asked for at the end. And, again, it can lead to a lowball offer and then tacking on another $8,000 of charges. So I think from a policy standpoint, it does not make any sense to reward a contractor who didn't follow the law and didn't follow his own contract. That contract should be most strictly construed against Fraun because Fraun vented the contract. Does the Court have any other questions? If not, again, we would ask for the three areas of relief, that the judgment for extra charges be reversed, that the judgment for interest in attorney's fees with respect to those extra charges be reversed, and that an additional $1,801 in attorney's fees be awarded to my client on the original statutory action. Thank you. Thank you. Mr. Reed? Police Court Counsel, the issue in regard to the charges here are characterized by the appellant as undocumented and that they should have been in writing. And I think a reading of the record will show that all parties referred to the charges as extra charges, using them in a generic sense, rather than in the case law references wherein whether it's a true extra work or whether it's outside the scope of the contract. In this case, the bill that was submitted to the parties was for work that was within the scope of the contract. The scope of the contract is defined in the addendum and also in the contract documents. In the contract, it says that, and I guess I should say as a predicate, Judge Welch, you asked about what kind of job this was. This was an over 100-year-old building that had three structures on it, or three roofs with common walls. One roof was about 20, 25, 26 feet in the air. The other ones were lower. There were rotting timbers. There were items in the house, it was a business at one time, I believe, that had been covered up. And my client testified in the trial, Mr. Shrum testified, that you can't give an exact bid because you don't know what you're going to be faced with in terms of work until you take the roof off the building. Are these flat roofs? I'm sorry? Are these pitch roofs or flat roofs? I think it's a pitch roof. I shouldn't say that because I don't know 100% for sure. I think it had elements of both. But it was a very old building. There was substantial damage that was obvious from an observation. The contract refers to deteriorated wood in the second paragraph on Appendix A-8 and talks about the charges for that. It's the position of Mr. Shrum, and it always was, that the work that he billed for was in the contract. And the part of the contract that Devin talks about it having to be in writing refers to work not specified in the contract. And the language says additional charges as specified herein. And herein is described in another paragraph. The court, as the finder of fact in this case and the finder of law, this court knows it has to be given great deference. There were contested facts in this case. For example, Mr. Shrum testified that all of this work was authorized by Mr. Daugherty. He was there on a daily basis. He saw this work being performed. And he just didn't like the amount of the bills, what it was. It wasn't that it wasn't authorized. It wasn't that it wasn't proper work. Mr. Daugherty never testified that he was overbilled or that he was charged for 25 pieces of wood when he only got 20 on the job. That was never part of this case. He didn't like the bill. The building was old. The building had to be repaired. Mr. Shrum worked with Mr. Daugherty throughout this. And Mr. Daugherty knew that these things were being put on his building. Mr. Reid, what about the Watson case? Even your contract on paragraph 2, where I see that they're giving the cost of the extras and everything else, says that it has to be made in writing. And then in paragraph 5, it allows for variation. But again, it says it has to be in writing. What about those two? The way I read that, Judge, is that as specified herein, except as specified herein. I think paragraph 5, about the writing, as specified herein, as specified herein refers to paragraph 2. That's the way I read that. And I think the Watson, in answer to your original question, the Watson case talks- It says agreed to in writing. Or subsequently agreed to in writing, yes. Or subsequently agreed to in writing. The first clause, the first sentence, yes. But then if you look back at paragraph 2, it says it will be added to the proposal in acceptance. And that document has the writing requirement. Proposal in acceptance. I'm just wondering how you get around Watson. Because I think that Watson refers to work outside the scope of the contract. And there's other cases, I think, that I cited in the brief where there was work done not part of the contract. For example, if they wanted to put a flower bed in, that's not part of the roofing contract. If he wanted to do some wiring work, or if he wanted them to do some plumbing work, those are outside the scope of the contract. And I think Watson is distinguishable on that, on that sentence, in that sentence. And I think paragraph 2 is covered that it doesn't have to be in writing, because it's defined in the contract as specified herein. The court, in its order and in some of its discussion, in the record, talks about waiver. I don't know if waivers are real strong, but I think both of these parties, for example, Mr. Daugherty wanted a gutter element put in on the gutters, which keeps leaves out, I guess. That was outside the contract, and he agreed to that, and he paid for it. And I think it was certainly a waiver as to that aspect of it, whether that waiver applies to the rest. I don't think you really have to go that far to affirm this case. And then Mr. Daugherty, again, never, he never said that the work wasn't done. He never said that the work wasn't, that he didn't authorize it. He never said that he was, missed bill. He just thought the bill was too high, and that's what this was about. And I think that's what the court, when the court entered its finding is the amount that was due, the court did make some deductions from the bill in entering its order. I think the court's order was proper in this case in all respects. The attorney's fees were provided in the contract by Shrum. Wood Decky in the repair stated in the contract to be part of the proposal and acceptance, in other words, part of the original contract. The court awarded a small amount of attorney's fees. I think the attorney's fees were proper for the plaintiff in this case. The court looked at his bill and couldn't decide which part of the bill was for defending the counterclaim and which part of the bill was for prosecuting the bad lien. And the bill was not differentiated between offense and defense, if you will. And he also, the court also made a finding that the attorney's fees were partially set off against each other. We had additional attorney's fees, but we didn't put them in the bill, but they would have been for that day. We were there about four, five, six hours. I forget how long. And furthermore, there was some testimony in the record about the lien. The court didn't really rely upon it, but in other words, the suit was to take the lien off, and plaintiff brought a witness in from the recorder of deeds office who said that the lien was valid irrespective of whether or not it was notarized. And the lien was released by Mr. Strum way before the suit was filed. And I think this case had a lot of contested facts in it. I think the court found properly in all respects that we would ask you to affirm the judgment. Thank you. Counsel, before you say something, on the attorney's fees issue, did the court award all of your attorney's fees that you asked for, seeing that they were within the- I think I had a bill that went up to a few days before the trial. I think so. Yes, sir. Thank you. Any other questions? Thanks. Counsel, let me ask a follow-up question on the attorney's fees. Did the court apply some kind of a percentage in determining, as counsel referred to, what was on offense and what was on defense? You say you've got $1,000 more and some change that you're wanting. Yes. What percent did you get? A third. Well, actually a quarter. It wasn't done on a percentage basis, and I disagree with what counsel said about not getting on his fees. They knocked off, like, $100 with respect to one item. Filing fees? That's not reflected in the judgment itself. It's reflected in the transcript when the math was being done. So you think the record will reflect that the court awarded fees by looking at the dates of the attorney's bill for work done? Well, with respect to Mr. Reed's bill, the- No, I'm talking about the Doherty's bill. To get a release of the leave. What-well, I cite what the court says in my brief, and I apologize I don't have that page, but the court indicated-because I asked the clarification. I said, are you cutting this off? And he said, well, there's going to be fees coming the other way. Well, he ended up giving Mr. Reed all of his fees, less like $100, and the trial transcript shows that. So it's not a question of apportioning his fees in the way my fees were apportioned. I think counsel has mischaracterized some other things, including testimony. My client did, in fact, testify that there were things done that he didn't know about and didn't agree to. He testified there were things he got billed for that never got done at all. He did testify that. So I think that that mischaracterized, and I think he mischaracterized the county clerk's testimony. Not that it's relevant here because they're not asking for reversal on the statutory part of it, but I'm mischaracterizing that as well. Counsel is absolutely right about the age of this building. It is an old building. But Mr. Trump knew that when he bid the job. And if he knows he's bidding against other people, you know, if you know it's an old building, then you make your bid reflect the fact that you're probably going to find some rotten wood under there. You don't make it the lowball offer, and then when you get the job, add another 30 percent to it. I thought that was in there for $40 a sheet. So that was in the contract. Yes, it is. So that's the rotten wood, I assume, unless you're talking about rafters and beams. But there's nothing there in the written contract that calls for another 22 hours in miscellaneous labor, whatever that is. Nothing in there that says that. So Trump seems to be making a semantics argument here, too. Well, they're really not extra charges. They're additional charges. And as additional charges, they're part of the contract. They're not extra. We cited on page 6 and 7 of my reply brief all the times that Mr. Trump himself and the court used the term extra charges. It's not additional charges. It's extra. So just switching words doesn't take it out from Watson-Lowe. But you do agree that there's a paragraph, too, that talks about extras being needed if there's deteriorating wood. That's true. And some of it is called for, and we did pay some of it. But that's an extra or not? Do you think that's in the contract then? The price of the wood for those specific decking items? Yeah. And that's why we have no trouble paying it. But 22 hours of miscellaneous – Even though there was no writing you all paid? My client tried to do the right thing. And under the law, it can't be penalized for having paid some of it, that that means he has to pay all of it. And the case is clear about that. They tried to do the right thing. They tried to pay what they thought was right, even though – I mean they're not lawyers. They don't know Watson-Lowe very well. They tried to pay what was right, and instead the trial court is penalizing them for trying to do the right thing and trying to pay more based on the fact they agreed to pay for some of it. That isn't the law. The law wasn't followed here. And I don't think this court should penalize my clients for trying to do the right thing under the circumstances either. We ask for the reversal of the extra charges, the reversal of the cost and interest and fees, and for the additional fees. Are there any other questions? Thank you. Okay, this matter will be taken under advisement and disposition issued in due course. Thank you, gentlemen.